**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**MICHAEL P. WAVERCAK,**

               **Plaintiff,**            **5:07-cv-482
                                                    (GLS)**

      v.

**COMMISSIONER OF SOCIAL
SECURITY,**

               **Defendant.**
_____

**APPEARANCES:**                   **OF COUNSEL:**

**FOR THE PLAINTIFF:**
Olinsky, Shurtliff Law Firm        JAYA SHURTLIFF, ESQ.
300 S. State Street
5th Floor
Syracuse, NY 13202

**FOR THE DEFENDANT:**
HON. RICHARD S. HARTUNIAN    MARIA P. FRAGASSI
United States Attorney             SANTANGELO
100 South Clinton Street         Special Assistant U.S. Attorney
Syracuse, NY 13261

BARBARA L. SPIVAK
Regional Chief Counsel
Social Security Administration
Office of General Counsel, Region II
26 Federal Plaza, Room 3904
New York, NY 10278

**Gary L. Sharpe
District Court Judge**

**MEMORANDUM-DECISION AND ORDER**

## I. **Introduction**

Plaintiff Michael P. Wavercak challenges the Commissioner of Social Security's denial of Disability Insurance Benefits (DIB) and seeks judicial review under 42 U.S.C. §§ 405(g) and 1383(c)(3). (*See* Compl., Dkt. No. 1.) Upon reviewing the administrative record and carefully considering the arguments, the court affirms the Commissioner's decision.

## II. **Background**

On November 9, 1998, Wavercak filed an application for DIB under the Social Security Act (the Act), alleging disability since March 21, 1998, based on a cervical disc herniation caused by a motor vehicle accident. (Tr.[1] at 71-73, 76.) After his application was denied, Wavercak requested a hearing before an Administrative Law Judge (ALJ), which was held on December 7, 1999. (Tr. at 18.) On June 13, 2000, the ALJ issued a decision denying the requested benefits, and the Social Security Administration Appeals Council denied review of that decision. (Tr. at 5-7, 15-26.) Wavercak then commenced a civil action challenging the ALJ's decision, and, by Order dated June 8, 2004, the case was remanded for

---

[1] "(Tr. )" refers to the page of the Administrative Transcript in this case.

2

further administrative proceedings. (Tr. at 357-58.) Pursuant to the Order, the Appeals Council vacated the decision and remanded the case to an ALJ. (Tr. at 392.) On remand, Wavercak appeared and testified before an ALJ. (Tr. at 839-70.) On November 23, 2005, that ALJ issued a decision denying the requested benefits, which became the Commissioner's final decision upon the Appeals Council's denial of review. (Tr. at 6-8, 23.)

Ultimately, Wavercak commenced the present action by filing a complaint on May 3, 2007, seeking review of the Commissioner's November 23 decision. (Dkt. No. 1.) The Commissioner filed an answer and a certified copy of the administrative transcript. (Dkt. Nos. 7, 8.) Each party, seeking judgment on the pleadings, filed a brief. (Dkt. Nos. 10, 11.)

### III. **Contentions**

Wavercak contends that the Commissioner's decision is not supported by substantial evidence or the appropriate legal standards. Specifically, Wavercak claims that: (1) the ALJ failed to properly apply the treating physician rule in assessing Wavercak's residual functional capacity (RFC); (2) the ALJ failed to properly analyze Wavercak's credibility; and (3) the ALJ improperly relied on vocational expert testimony at step five. (*See* Pl. Br. at 15-22, Dkt. No. 10.) The Commissioner counters that substantial

3

evidence supports the ALJ's decision.

## IV.  Facts

The evidence in this case is undisputed and the court adopts the parties' factual recitations.  (*See* Pl. Br. at 3-12, Dkt. No. 10; Def. Br. at 1-12, Dkt. No. 11.)

## V.  Standards of Review

The standard for reviewing the Commissioner's final decision under 42 U.S.C. § 405(g), and the five-step process used by the Commissioner in evaluating whether a claimant is disabled under the Act are both well established and will not be repeated here.  For a full discussion of both the standard of review and the Commissioner's five-step process, the court refers the parties to its previous opinion in *Christiana v. Comm'r Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-2 (N.D.N.Y. Mar. 19, 2008).

## VI.  Discussion

### A.    Treating Physician Rule

At step three of his analysis, the ALJ concluded that Wavercak retained the RFC to perform a significant range of light work.  (Tr. at 276, 278-79.)  The ALJ further concluded that Wavercak was unable to perform

repetitive neck movements due to pain and headaches, but could occasionally climb, balance, stoop, kneel, crouch, and crawl.  (*Id.*) Wavercak claims that the ALJ failed to properly apply the treating physician rule in making this determination.  Specifically, Wavercak argues that the ALJ erred by not assigning controlling weight to treating physician Dr. John F. Eppolito's retrospective opinion as to the impact of Wavercak's newly-diagnosed sleep apnea on his functional limitations.  This argument is without merit.

Generally, the opinion of a treating physician, even if retrospective, is given controlling weight if it is based upon well-supported, medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record.  *See* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); *see also Schaal v. Apfel*, 134 F.3d 496, 503 (2d Cir. 1998); *Campbell v. Barnhart*, 178 F. Supp.2d 123, 134-135 (D. Conn. 2001) ("An ALJ is required to give ... controlling weight [to a treating physician's retrospective opinion] if it was predicated upon a medically accepted clinical diagnostic technique and whether considered in light of the entire record, it establishes the existence of a physical impairment." (citing *Dousewicz v. Harris*, 646 F.2d 771, 774 (2d Cir.

5

1981)).)  An ALJ may not arbitrarily substitute his own judgment for a competent medical opinion.  *See Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999).  Where controlling weight is not given to the treating physician's opinion, the ALJ must assess several factors to determine how much weight to give the opinion, including: (1) the length, nature, and extent of the treatment relationship; (2) the frequency of examination by the treating physician for the conditions in question; (3) the medical evidence and explanations provided in support of the opinion; (4) the consistency of the opinion with the record as a whole; (5) the qualifications of the treating physician; and (6) other relevant factors tending to support or contradict the opinion.  *See* 20 C.F.R. §§ 404.1527(d)(2)-(6), 416.927(d)(2)-(6).

The "ultimate finding of whether a claimant is disabled and cannot work [is] reserved to the Commissioner."  *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) (internal quotation marks and citation omitted); *see also* 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1).  "[T]he Social Security Administration considers the data that physicians provide but draws its own conclusions ...."  *Snell,* 177 F.3d at 133.  Where the evidence of record includes medical source opinions that are inconsistent with other evidence or are internally inconsistent, the ALJ must weigh all of the evidence and

6

make a disability determination based on the totality of that evidence. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

Upon review of the ALJ's decision and the related medical evidence and opinions, it is clear that the ALJ's decision to afford limited weight to Dr. Eppolito's retrospective opinion was not improper. Dr. Eppolito opined in his June 2002 and January 2005 medical source statements that Wavecak's sleep apnea, combined with his herniated cervical disc, would significantly limit his ability to perform even sedentary work. (Tr. at 423-27, 497-501.) Dr. Eppolito further opined that these limitations existed and persisted since Wavecak's March 21, 1998 onset date. (*Id.*) In allocating only "limited weight" to this opinion, the ALJ explained that it was not consistent with the other substantial record evidence. Specifically, the ALJ found that the medical evidence of record failed to establish either a diagnosis of sleep apnea or limitations attributable to the disorder until after the Commissioner's June 2000 decision—a finding that Wavercak does not dispute. (Tr. at 270, 274; *see* Pl. Mem. of Law at 12, Dkt. No. 10.) Further, the ALJ concluded that substantial record evidence was consistent in supporting his determination that Wavercak was capable of performing light work.

7

The court agrees with the ALJ's observation in this regard. Wavercak's 1998 treatment history with Dr. Eppolito, for example, documents a general pattern of improvement of Wavercak's symptoms without any significant neurological abnormalities, radiculopathy, or sensory deficit. (Tr. at 126, 226 -27, 659-668.) In addition, Dr. Eppolito's observations from November 23, 1998, which the ALJ afforded "considerable weight,"[2] are consistent with an ability to perform light work.[3] (Tr. at 126, 273.)

Consistent with these findings are the findings of Dr. David Y. Eng, Wavercak's treating neurosurgeon, which were also afforded "considerable weight." (Tr. at 274.) In his treatment notes, Dr. Eng indicated that Wavercak was performing well in his physical therapy sessions, and observed that Wavercak reported positive results from the therapy. (Tr. at 123, 127, 162, 167.) And like Dr. Eppolito, Dr. Eng opined that Wavercak was capable of performing work that does not require heavy lifting or

---

[2]The ALJ explained that he afforded this opinion "considerable weight" because Dr. Eppolito "is a treating physician and his opinion is consistent with the clinical findings of record, the claimant's reported activities and other substantial evidence." (Tr. at 274.)

[3]Dr. Eppolito concluded that Wavercak should have a forty-pound weight restriction and should do no excessive, repetitive pushing, pulling, bending, or lifting. (Tr. at 126, 273.) Further, Dr. Eppolito reported no limitations on Wavercak's ability to sit, stand, or walk.

8

looking up and down for extended periods of time.  (Tr. at 177.)

The consultative examination findings of Drs. Berton Shayevitz and Kalyani Ganesh are also consistent with an ability to perform light work. Dr. Shayevitz opined that Wavercak was "minimally physically limited, if at all, but would probably do best working in a situation where he did not have to do repetitive or extensive neck motions," (Tr. at 196), and Dr. Ganesh concluded that Wavercak "had no gross limitations in sitting, standing, walking, or climbing" and had only "mild to moderate limitation in the amount and duration he can lift, carry, push and pull," (Tr. at 165).

The functional assessments of Drs. Baleshwar Prashad and Sury Putcha, State agency review physicians, contain similar findings.  Namely, based on a review of the record evidence, the doctors concluded that Wavercak "had the ability to lift and carry 20 pounds occasionally and 10 pounds frequently and sit six hours and or stand and walk six hours in an eight-hour work day."  (Tr. at 170, 273.)  They further concluded that Wavercak's "abilities to push and pull with the upper extremities was limited and [Wavercak] could only occasionally climb, balance, stoop, kneel, crouch and crawl but he had no manipulative or environmental limitations." (Tr. at 170, 273.)

9

In addition to these opinions and findings, Wavercak's reported daily activities during the relevant period suggest that he was able to perform light work.  In December 2009, for example, Wavercak testified that "he was able to get his son off to school, do a little cleaning, get the mail, pick his son up from school every day, do the dishes, cook, shop, watch a little television, work on his baseball card collection, visit his mother almost every day, and drive 25 miles a day."  (Tr. at 34-35, 39-40; *see also* Tr. at 272.)  And Wavercak reported similar activities during his consultative examinations with Drs. Ganesh and Shayevitz, stating that he was able to "drive, cook, clean, do laundry, shop, manage money, care for his children, socialize, bathe, shower, dress, watch television, go out, listen to the radio, read, feed his fish and birds, check the mail, visit with some friends, and attend physical therapy three times per week."  (Tr. at 164, 194-95, 272.)

Given this and other evidence, it is clear that the ALJ's RFC determination was amply supported by the record.  And because the court agrees that Dr. Eppolito's retrospective opinion was not consistent with the record as a whole, the court finds that the ALJ's decision not to afford it

10

more than limited weight was not improper.[4]  Accordingly, the ALJ's RFC determination, including the decision to afford Dr. Eppolito's retrospective opinion less than controlling weight, is affirmed.

## B.  Credibility Determination

Wavercak next claims that the ALJ failed to properly analyze the credibility of his subjective complaints of pain.  This argument is also unavailing.

An ALJ must take into account subjective complaints of pain in making the five-step disability analysis.  20 C.F.R. §§ 404.1529(a), (d), 416.929(a), (d).  However, "[a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability ...."  *See* 42 U.S.C. § 423(d)(5)(A).  The Commissioner is obligated to evaluate all of a claimant's symptoms, "including pain, and the extent to which [those] symptoms can reasonably be accepted as consistent with the objective

---

[4]Contrary to Wavercak's contentions, the inconsistency between the record evidence and Dr. Eppolito's opinion did not require the ALJ to re-contact Dr. Eppolito or the other physicians of record for clarification in light of the sleep apnea diagnosis.  Where the evidence received by the ALJ is consistent and sufficient to determine whether a claimant is disabled, the ALJ may "make [his] determination or decision based on that evidence," and further development of the record is unnecessary.  20 C.F.R. § 404.1527(c)(1); *see also id.* § 404.1527(c)(2) (providing that even if the record evidence is inconsistent, further record development is not required if, after weighing all the evidence, a disability determination can be made). Here, as explained above, the court is satisfied that the ALJ had before him substantial, consistent evidence indicating that Wavercak retained the RFC to perform a significant range of light work.  Accordingly, the ALJ was not obligated to further develop the record.

medical evidence and other evidence." 20 C.F.R. §§ 404.1529(a), 416.929(a).

The ALJ must first evaluate the objective medical evidence to determine whether the claimant's impairments "could reasonably be expected to produce the pain or other symptoms alleged ...." 20 C.F.R. §§ 404.1529(a), 416.929(a). "Second, if the medical evidence alone establishes the existence of such impairments, then the ALJ need only evaluate the intensity, persistence, and limiting effects of a claimant's symptoms to determine the extent to which it limits the claimant's capacity to work." *Crouch v. Comm'r, Soc. Sec. Admin.*, 6:01-CV-0899, 2003 WL 22145644, at *10 (N.D.N.Y. Sept. 11, 2003) (citing 20 C.F.R. §§ 404.1529(c), 416.929(c)). But, if the alleged symptoms suggest that the impairment is greater than demonstrated by objective medical evidence, the ALJ will consider other factors relevant to the claimant's symptoms. *See* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *see also* Social Security Ruling (SSR) 96-7p, 1996 WL 374186, at *4 (S.S.A. July 2, 1996). These factors include, among other things, the claimant's daily activities; the location, duration, frequency, and intensity of the pain; the type, dosage, effectiveness, and side effects of medication; and other treatment received

12

or measures taken to relieve the pain. *See* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

Ultimately, "[t]he reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision." SSR 96-7p, 1996 WL 374186, at *4. Thus, "after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility," an ALJ may reject the claimant's subjective allegations of pain as long as she sets forth "her reasons with sufficient specificity to enable [the court] to decide whether the determination is supported by substantial evidence." *Lewis v. Apfel*, 62 F. Supp.2d 648, 651 (N.D.N.Y. 1999) (internal quotation marks and citation omitted).

Here, the ALJ found that Wavercak's alleged limitations—which suggested an impairment greater than that demonstrated by the objective medical evidence—were "not totally credible." (Tr. at 278.) In attacking this finding, Wavercak argues that the ALJ failed to consider the relevant statutory factors. This argument is also without merit.

Initially, it is clear from the ALJ's decision that his credibility determination was properly rooted in a consideration of the entire record in light of the relevant factors. Specifically, after thoroughly outlining the

13

relevant record evidence, (Tr. at 270-75), the ALJ explained that he did not find Wavercak's allegations entirely credible because of "the positive effect of treatment, the intermittent and mild nature of [Wavercak's] symptoms, the minimal clinical findings, [Wavercak's] extensive daily activities, [Wavercak's] own admission that there were other jobs he could do, and the probative medical opinions."  (Tr. at 276.)

     Despite these findings, Wavercak appears to claim that his long work history should have nonetheless compelled a finding that he was credible. However, while it is true that "[a] claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability," *Rivera v. Schweiker*, 717 F.2d 719, 725 (2d Cir. 1983) (citation omitted), that factor alone is not dispositive.  Instead, as explained above, the ALJ must examine all factors relevant to the claimant's symptoms and render an independent judgment based on the totality of the evidence.  *See* 20 C.F.R. 404.1529(c)(3); *Mimms v. Heckler*, 750 F.2d 180, 185-186 (2d Cir. 1984).  Thus, because the court is satisfied that the ALJ's determination was the result of such an examination, and because the reasons articulated for the credibility determination are grounded in the substantial evidence outlined by the ALJ, the court finds no error.

14

Accordingly, the ALJ's credibility determination is affirmed.

## C. Vocational Expert Testimony

Finally, Wavercak challenges the ALJ's reliance on the vocational expert testimony given at his hearing. Specifically, Wavercak argues that the hypothetical question posed to the vocational expert was incomplete because it did not reflect Wavercak's limitations due to sleep apnea. However, because the court agrees with the ALJ that "the record does not establish functionally limiting drowsiness during the period at issue," (Tr. at 277), and since the court has already determined that the the ALJ's RFC determination is supported by substantial evidence, Wavercak's argument on this point fails. *See Mancuso v. Astrue*, No. 09-1699-cv, 2010 WL 116199, at *3 (2d Cir. Jan. 14, 2010) (unpublished) ("The Commissioner may rely on a vocational expert's testimony ... so long as the hypothetical is based on substantial evidence." (citation omitted)); *Salmini v. Comm'r of Soc. Sec.*, No. 09-3642-cv, 2010 WL 1170133, at *4 (2d Cir. Mar. 25, 2010) (unpublished) (affirming a hypothetical question based on RFC assessment where that assessment was supported by substantial evidence). Accordingly, the ALJ's reliance on the vocational expert testimony in assessing what jobs Wavercak could perform was appropriate and is

15

therefore affirmed.

## D. Remaining Findings and Conclusions

After careful review of the record, the court finds that the remainder of the ALJ's decision is supported by substantial evidence and is therefore affirmed.

## VII. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the decision of the Commissioner is **AFFIRMED** and Wavercak's complaint is **DISMISSED**; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

June 25, 2010
Albany, New York

*Gary L. Sharpe*
United States District Court Judge